UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KIYEL JUSTIN JOHNSON,

                        Plaintiff,                    Case No. 1:20-cv-90

v.                                                    Honorable Robert J. Jonker

CHAD ULBERG et al.,

                        Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections

(MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Michigan.  The events

about which he complains, however, occurred while he was housed in the Kent County Jail

awaiting trial and then sentencing. Plaintiff sues Kent County Jail Shift Supervisor Chad Ulberg; Lieutenant Tom Burnewell; Sergeants Unknown Knott and Unknown Dock; Law Library Coordinator Rob Steele; Correctional Officer Unknown Minnick; stand-by defense counsel Naesha Leys; and Judge William G. Kelly. Plaintiff indicates that he is suing Defendant Ulberg, Knott, Steele, Dock, and Kelly in their respective official and personal capacities. Plaintiff does not indicate the capacity in which he is suing Defendants Minnick, Leys, and Burnewell.

Plaintiff alleges that each Defendant played some role in denying him access to the courts or denying him due process during a roughly one-year period beginning in October of 2018. On October 9, 2018, Plaintiff "kited"[1] defendant Steele seeking a call out to visit the law library. Defendant Steele responded that, because Plaintiff was represented by counsel in his criminal proceedings, he was not eligible to visit the law library. Plaintiff protested that he was not represented by counsel; but, instead, he was representing himself. Defendant Naesha Leys was serving as stand-by counsel for Plaintiff.

For three months, Plaintiff sent kites to Defendant Knott regarding the issue. On January 22, 2019, Defendant Knott provided Plaintiff a grievance form. Plaintiff filed the grievance with Defendant Ulberg two days later. Defendant Knott reviewed the grievance, looked at the transcripts in Plaintiff's case, and determined that Plaintiff should have access to the law library. Knott signed that the grievance was resolved on January 29, 2019. Defendant Lieutenant Burnewell, shift commander, signed off on the grievance on the same date.

Defendant Knott promptly called Plaintiff out of his cell to inform him that Defendant Steele was out for the rest of January. Knott indicated he would try to find someone to substitute in as the law librarian. He was apparently not successful. Plaintiff continued to kite

---

[1] A "kite" is a written form of communication between an inmate and corrections staff. *See, e.g., Hall v. Warren*, 443 F. App'x 99, 101 n.1 (6th Cir. 2011).

Steele and Ulberg. On February 13, 2019, Steele called Plaintiff out to visit the law library. At that time, Steele told Plaintiff he was eligible to be called out once a week for one hour.

Plaintiff was able to timely prepare a motion seeking dismissal for violation of his speedy trial rights; however, he was not able to get the motion notarized on a timely basis. He claims the motion was filed late for that reason.

In the weeks that followed, Plaintiff was moved around in the jail. He was placed in segregation for a period of time on a misconduct charge that he claims was false. Plaintiff claims his placement in segregation violated his due process rights. He kited Defendants Knott, Burnewell, and Ulberg, as well as Sergeant Ashly, to get back in the library to challenge the misconduct. Plaintiff also kited Defendant Steele while Plaintiff was in segregation to obtain documents to pursue a § 1983 claim to challenge the misconduct. Plaintiff did not receive responses from any of the Defendants. Over the months of his stay in the Kent County Jail, Plaintiff was only called out for law library 7 times.

Plaintiff got Defendant Minnick to send email and voicemails to Defendant Steele, but Steele did not answer. Plaintiff sought relief from Sergeant Lyons to no avail. Only after the jury found Plaintiff guilty of second-degree home invasion, possession of burglar's tools, and resisting a police officer did Steele call Plaintiff out from the Max pod for law library. The next day, a shift supervisor or sergeant brought Plaintiff another grievance form. Plaintiff again grieved the failure to call him out for law library. Plaintiff indicated that he was not able to file a number of motions in the criminal proceedings because he was denied access to the law library. The grievance was denied.

Plaintiff claims that if Defendants had permitted him access to the law library, he would have been able to get the criminal case dismissed, been convicted of lesser offenses, or

sentenced to a shorter period of incarceration, perhaps in the county jail instead of a state correctional facility. Plaintiff seeks damages in the amount of $260,000.00.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

4

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The crux of Plaintiff's complaint is that Defendants have denied him access to the law library and, in so doing, effectively denied him access to the courts to defend against criminal charges and to pursue claims under § 1983 for violation of his due process rights in connection with a false prison misconduct report. Denial of access to the court violates the First Amendment. Plaintiff's allegations might also be liberally construed as raising a claim for violation of his Fourteenth Amendment due process rights in connection with the prison misconduct disciplinary proceedings.

## III.    No allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1

(6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Plaintiff makes no allegations against Defendants Unknown Dock, Naesha Leys, and William G. Kelly. Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief") with regard to those three Defendants, his complaint against them must be dismissed.

## IV.   Judicial immunity

Even if Plaintiff's complaint included allegations against District Court Judge William G. Kelly, his claims against Judge Kelly would be properly dismissed on grounds of immunity. Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's complaint fails to implicate either of the exceptions to judicial immunity. There is no suggestion that Judge Kelly acted outside of his jurisdiction. Accordingly, he would be absolutely immune from liability.

## V.     State actor

Plaintiff's claim against his stand-by defense counsel, Naesha Leys, also fails. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Plaintiff cannot show that his stand-by attorney acted under color of state law. In *Polk County. v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel perform a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state—acts purely on behalf of the client and free from state control. *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions.

*See, e.g., Floyd v. Cty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003). Accordingly, Plaintiff's stand-by counsel does not act under color of state law, and no claim under § 1983 can be maintained against her.

## VI.     Responding to a grievance

Part of Plaintiff's claim against Defendants Ulberg, Knott, and Steele is premised on those Defendants' responses to his initial grievance seeking additional law library time. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Therefore, Defendants Ulberg, Knott, and Steele are not liable for their response to Plaintiff's grievance. Moreover, because their response to Plaintiff's grievance vindicated Plaintiff's claim—that he was entitled to be called out for law library because he was not represented by counsel—their responses to Plaintiff's grievance would not provide a basis for liability anyway.

Plaintiff does not name the Sergeant who denied his second grievance. It is possible that the unnamed Sergeant is, in fact, Defendant Dock. If that is the case, Defendant Dock also cannot be held liable for his response to Plaintiff's grievance.

## VII.     Fourteenth Amendment due process

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due

process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff claims that there were defects in the procedures that resulted in the determination that he was guilty of a misconduct, a determination that resulted in his placement in segregation. Plaintiff suggests the procedural defects rise to the level of a due process violation.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,*

515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Plaintiff does not claim that the misconduct conviction had any effect on the duration of his confinement at the Kent County Jail. Moreover, Plaintiff does not allege that the conditions in the jail's segregation unit imposed atypical and significant hardships upon him. Accordingly, he has failed to identify a protected liberty interest that warrants due process protection.

## VIII. First Amendment access to the courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id*. at 817. The Court further noted that in addition to law libraries

or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id*. at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (Lewis changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id*. at 416. Plaintiff claims he was entitled to more law library time to pursue his defense in the criminal prosecution and to pursue a civil rights claim based on the lack of due process in his misconduct conviction.

Plaintiff is not entitled to law library time to pursue his defense in a criminal prosecution. The state satisfies its obligation to provide a criminal defendant access to the courts by providing appointed counsel in a criminal proceeding. Where a criminal defendant chooses to reject appointed counsel, it is likely to impair meaningful access to the courts; however, that is simply one of the rights he gives up when he knowingly and intelligently waives his right to counsel. *See United States v. Smith*, 907 F.2d 42, 44-45 (6th Cir. 1990) ("We find that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library."); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990); ("' [T]he state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves[.]'"); *McBee v. Campbell Cty. Det. Ctr.*, No. 17-5481, 2018 WL 2046303, at *3 (6th Cir. Mar. 15, 2018) ("A pretrial detainee voluntarily proceeding in a criminal case pro se is not constitutionally entitled to access to a law library.").

The Supreme Court has acknowledged a circuit split on this issue, *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005); but, the Sixth Circuit's position is clear and binds this Court.

Therefore, Plaintiff has failed to state a claim for denial of access to the courts by virtue of the Defendants' failure to give him law library time to work on his criminal defense.

Plaintiff is entitled to access the courts to raises claims under 42 U.S.C. § 1983, but he has not alleged any lost remedy. Indeed, he is pursuing a remedy for the alleged due process violation in this lawsuit—he has successfully accessed the courts to raise his claim; therefore, he has not "lost" anything by Defendants failure to provide him access to a library. Moreover, as explained above, *see* § VII, his claim has no merit. Accordingly, Plaintiff has failed to allege actual injury flowing from Defendants' denial of access to the law library to pursue Plaintiff's § 1983 claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:     February 21, 2020          /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE